[No. B200226. Second Dist., Div. One. Jan. 30, 2008.]

02 DEVELOPMENT, LLC, Plaintiff and Appellant, v.
607 SOUTH PARK, LLC, Defendant and Respondent.

**COUNSEL**

David M. Browne for Plaintiff and Appellant.

Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, Patricia L. Glaser and Mark L. Block for Defendant and Respondent.

**OPINION**

**ROTHSCHILD, J.**—02 Development, LLC (02 Development), a California limited liability company, appeals from a summary judgment in favor of 607 South Park, LLC (607 South Park), also a California limited liability company, on 02 Development's complaint for breach of a real estate purchase agreement. We reverse.

## BACKGROUND

In March 2004, 607 South Park entered into a written agreement to sell the Park Plaza Hotel to "Creative Environments of Hollywood, Inc., as General Partner of 607 Park View Associates, Ltd., a California limited partnership" (Creative Environments) for $8.7 million. In February 2005, Creative Environments and 02 Development executed a contract purporting to assign Creative Environments's rights in the hotel purchase agreement to 02 Development.

02 Development did not exist when the parties executed the assignment agreement. Robert Epstein executed the assignment agreement for 02 Development, and in May 2005 he created 02 Development by executing and filing the appropriate articles of organization with the California Secretary of State.

02 Development later sued 607 South Park for breach of the hotel purchase agreement. The operative second amended complaint alleged that 607 South Park both refused to perform under the contract and denied that 02 Development held any rights under the purchase and assignment agreements.

607 South Park moved for summary judgment on two grounds: (1) There was no enforceable contract between 607 South Park and 02 Development because 02 Development did not exist when the assignment agreement was executed; and (2) 607 South Park's repudiation of the alleged contract did not cause 02 Development any harm because 02 Development was not ready, willing, and able to fund the purchase of the hotel. In support of the second ground, 607 South Park presented evidence that neither Epstein nor 02 Development had the $8.7 million needed to close the purchase of the hotel or had commitments from anyone else to provide the necessary financing. 607 South Park presented no other evidence concerning 02 Development's ability to fund the purchase of the hotel.

In opposition to the motion, 02 Development argued that a business entity can enforce preorganization contracts made for its benefit. 02 Development also argued that to prove causation it needed to prove only that it would have been able to fund the purchase of the hotel when required to do so under the contract. Thus, contrary to 607 South Park's argument, 02 Development contended that it did not need to prove that it already had the necessary funds, or already had binding commitments from third parties to provide the funds, when 607 South Park anticipatorily repudiated the contract. All that 02 Development needed to prove was that it would have been able to obtain the necessary funding (or funding commitments) in order to close the transaction on time.

The trial court granted the motion and entered judgment in favor of 607 South Park.[1] 02 Development timely appealed.

---

[1] The judgment provides for an award of attorney's fees to 607 South Park in the amount of $289,481.25. None of the proceedings concerning that award are reflected in the record, so it is impossible for us to determine its basis. That is of no consequence, however, because our resolution of the merits of the appeal requires reversal of the judgment in its entirety, including the attorney's fees award.

## STANDARD OF REVIEW

We review the trial court's ruling on a motion for summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

## DISCUSSION

02 Development argues that both grounds for 607 South Park's summary judgment motion fail as a matter of law and that the trial court therefore erred in granting the motion. We agree.

### I. Enforceability of Preorganization Contracts

■ It is hornbook law that a corporation can enforce preincorporation contracts made in its behalf, as long as the corporation "has adopted the contract or otherwise succeeded to it." (1A Fletcher Cyclopedia of the Law of Private Corporations (2002 rev. vol.) § 214, pp. 448–450 ["Adoption or ratification may be express or implied. Indeed, one means of adopting a preincorporation contract is the corporation's institution of an action on it"].) California law does not deviate from that well-established norm. (*El Rio Oils v. Pacific Coast Asphalt Co.* (1949) 95 Cal.App.2d 186, 192 [213 P.2d 1] [holding that "a preorganization agreement made for the benefit of [a] corporation" is "enforceable by [the corporation] after its organization"].) 607 South Park does not argue that limited liability companies should be treated differently from corporations in this respect, and we are aware of no authority that would support such a position. 607 South Park's first ground for its summary judgment motion—that there is no enforceable contract between 607 South Park and 02 Development because 02 Development did not exist when the assignment agreement was executed—therefore fails as a matter of law.

■ 607 South Park's principal contention to the contrary is that a nonexistent business entity cannot be a party to a contract. The contention is true but irrelevant. When the assignment agreement was executed, 02 Development did not exist, so it was not then a party to the agreement. But once 02 Development came into existence, it could enforce any preorganization contract made in its behalf, such as the assignment agreement, if it adopted or ratified it.

In its reply in support of its summary judgment motion and also on appeal, 607 South Park further argues that there is no evidence that after 02 Development came into existence it ratified the assignment agreement. 607 South Park did not, however, raise the issue of ratification either in its initial

memorandum of points and authorities in support of the summary judgment motion or in its separate statement of undisputed material facts. Consequently, the burden of production never shifted to 02 Development to present evidence of ratification, so the alleged absence of such evidence does not constitute a ground for affirmance. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

## II.   Causation

In the trial court, 607 South Park contended that in order to prove causation 02 Development would have to prove either that it had the $8.7 million necessary to fund the transaction or that it had legally binding commitments from third parties to provide the necessary funding. That contention was legally erroneous (see *Ersa Grae Corp. v. Fluor Corp.* (1991) 1 Cal.App.4th 613, 624–626 [2 Cal.Rptr.2d 288]), and 607 South Park disavows it on appeal.[2]

Instead, 607 South Park now argues that its motion was based on the proposition that 02 Development "must present admissible evidence that it would have been financially able to close the transaction." But 607 South Park's evidence in support of its motion showed only that 02 Development had neither the $8.7 million to fund the transaction nor legally binding commitments from third parties to provide the funding. 607 South Park presented no evidence that 02 Development would have been unable to arrange for the necessary funding to close the transaction on time if 607 South Park had given it the opportunity instead of repudiating the contract in advance. Because 607 South Park introduced no evidence to support an argument based on the proposition of law that 607 South Park is now advocating, the burden of production never shifted to 02 Development to present contrary evidence. (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at pp. 850–851.)

For all of these reasons, the trial court erred when it granted 607 South Park's motion for summary judgment.

---

[2] 607 South Park claims that it *never* relied upon that legally erroneous contention. Tellingly, 607 South Park attempts to support that claim by citing only its *reply* in support of its summary judgment motion. On page 7 of its original memorandum of points and authorities in support of the motion, however, 607 South Park did expressly rely on precisely the contention we have identified (i.e., that in order to prove causation 02 Development would have to prove either that it had the $8.7 million necessary to fund the transaction or that it had legally binding commitments from third parties to provide the necessary funding).

## DISPOSITION

The judgment is reversed, and the trial court is directed to enter an order denying 607 South Park's motion for summary judgment. Appellant shall recover its costs of appeal.

Mallano, Acting P. J., and Jackson, J.,[*] concurred.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.